### ROCKWELL et al. v. PECK.

(Supreme Court, Appellate Division, Third Department. January 12, 1897.)

1. CONTRACTS—MEASURE OF DAMAGES FOR BREACH.

A recovery for defendant's breach of contract to sell property to the best advantage, and pay plaintiff the value of plaintiff's interest therein out of the proceeds, is not limited to the amount actually received by defendant, where he sold the property for less than its value and appropriated the proceeds, as he is liable for what was lost through his misconduct.

2. PARTNERSHIP—WHAT CONSTITUTES—COMMUNITY OF INTEREST.

A partnership is not created as between the transferees under a bill of sale made in satisfaction of their claims against the transferror, where it recites that two of them (R. and B.) shall be first paid what is due them out of the proceeds of the property, and the remainder shall belong to the third (P.), and B. continues the transferror's business under the name of B. & Co., with the consent of the others, in order to save P. from loss, but no additional capital is put in, as in such case there is no community of interests.

3. WITNESSES—TRANSACTIONS WITH DECEDENT—DERIVATION OF TITLE.

A person who parted with his title to property before the occurrence of any of the transactions concerning it from which a cause of action arose, is not within the prohibition of Code Civ. Proc. § 829, that a person from whom a party to an action derives his title cannot testify in behalf of such party against an executor, concerning personal transactions between witness and decedent.

Appeal from judgment on report of referee.

Action by Sarah B. Rockwell and Mary A. Rockwell, as executrices of William W. Rockwell, deceased, against Abby M. Peck, as executrix of Daniel Peck, deceased, to recover on a contract. There was a judgment in favor of plaintiffs, and defendant appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

A. D. Wait, for appellant.
J. W. Houghton, for respondents.

LANDON, J.   The defendant contends that upon the complaint no recovery could be had against her, except upon an accounting in respect to the property in question and of the proceeds thereof, and of the business carried on by Rockwell, Brisbin, and Peck with it. We do not think this is so.   The complaint, after reciting the details of the transactions resulting in vesting the title to the personal property in question in William W. Rockwell, the plaintiff's testator, and Daniel Peck, the defendant's testator, alleges in substance that, in the spring of 1881, Rockwell and Peck were owners of the property, Rockwell having the prior right to receive $2,200 from it or its proceeds, and Peck having the sole ownership of the remainder; and that thereupon Rockwell and Peck made an agreement by which Peck should have the sole possession and management of the property with power of disposition; that he should manage and dispose of it promptly to the best advantage, and out of the proceeds pay Rockwell the $2,200 and interest due him, and that then Peck should be the sole owner of what was left; that the property was worth upward of $4,000; that Peck, under this agreement, took sole possession of the property, sold and disposed of it all, but not promptly or in a businesslike way, and applied the proceeds to his own use, and never paid Rockwell anything.   The complaint does not allege that Peck did actually receive proceeds enough to pay Rockwell.   For this breach of agreement by Peck, Rockwell was entitled to recover damages, and the measure of his damages was the loss the breach caused him.   It would be unjust to permit Peck to waste or misapply the property, and then be credited with the amount lost by such waste or misapplication.

The answer alleges that an accounting was necessary between Rockwell, Brisbin, and Peck, but the evidence did not make a case for such accounting.   Rockwell, Brisbin, and Peck were separately accommodation indorsers upon the notes of Pope & Kellogg, the assignors of the property in question to them.   Pope & Kellogg were manufacturers of shirts, collars, and cuffs at Glens Falls.   Rockwell's liability as their indorser was $2,200, Brisbin's, $1,100, and Peck's, $2,600.   Rockwell and Brisbin had a chattel mortgage upon the property as security for their respective indorsements, and Peck held a junior chattel mortgage as his security.   Pope & Kellogg, May 26, 1881, in consideration of Rockwell's, Brisbin's, and Peck's respective agreements each to pay the notes upon which he was indorser, sold to them the tools, appliances, and stock of their manufacturing business; the bill of sale stating that, as between Rockwell, Brisbin, and Peck, Rockwell and Brisbin should first be paid out of the proceeds of the property, and the balance should belong to Peck.   Each paid the notes indorsed by him.   Immediately after their purchase, Peck, fearing that he might not be paid in full, requested Brisbin to carry on the business.   Brisbin consented, and carried it on from June 1, 1881, until November, 1881, in the name of "Brisbin & Com-

pany." Rockwell and Peck consented. No additional capital was added. In November, 1881, Brisbin, with the consent of Rockwell and Peck, drew out of the bank $1,100, proceeds of the business and of some of the property sold by him, and withdrew with the understanding between himself, Rockwell, and Peck that his interest in the property was extinguished, and that Rockwell and Peck were henceforth the sole owners of it and of the business. Thereupon Rockwell and Peck made an agreement upon which this cause of action depends. It is probable that, as to third persons, Rockwell, Brisbin, and Peck could be held as partners, but as between themselves they were not partners. Brisbin, at the request of Peck and with the consent of Rockwell, carried on the business with the view of keeping the plant and business in a salable condition, and to pay himself and Rockwell the amounts of their investments in it, and thus to save, as far as possible, Peck from loss upon his junior interest. Their interests in the business and property were not joint. Each had a separate interest to the amount of his investment, and Rockwell's and Brisbin's several interests were prior and superior in lien to Peck's. They were not trying to make a common profit, but a profit for Peck's sole benefit. Each one was trying to recover from or with the property what he had put in it. Brisbin, during his control, was trying to help Peck by first helping Rockwell and himself, but, as it was finally settled, by first helping himself. They were rather mortgagees in possession trying to realize their respective and successive liens from the property surrendered to them by the mortgagors of the property. If, as is not found or shown, Brisbin drew more from the property or business than was his due, and his settlement with Rockwell and Peck was in fraud of their rights, then, in the order of Rockwell's and Peck's liens, he injured Peck, and Peck had his cause of action against him. But no facts are alleged or shown charging Rockwell with liability for such injury.

The defendant also contends that the answer sets up a counterclaim, and that the same stands admitted, because no reply to it was served. The answer does allege a claim against Rockwell and Brisbin growing out of the business which the answer alleges they carried on with the property in question, but this is not a counterclaim against Rockwell individually, and no other force can be given to it than as an alleged defense to the cause of action set forth in the complaint.

The defendant alleges error in the reception of testimony given by the assignor of the property in question to Rockwell, Brisbin, and Peck, under whom Rockwell and Peck derived their title, concerning personal communications and transactions between the assignor and Peck, the defendant's testator, subsequent to the assignment. It is plain that the cause of action here alleged was not derived from the assignor, but arose out of the subsequent transactions of Rockwell and Peck in relation to the property assigned to them. Code Civ. Proc. § 829, does not, either in letter or in spirit, apply.

The judgment should be affirmed, with costs. All concur.